Stephen HARPER and Stanley HARPER *v.*
WHEATLEY IMPLEMENT COMPANY, INC.

82-145 643 S.W.2d 537

Supreme Court of Arkansas
Opinion delivered December 13, 1982
[Rehearing denied January 17, 1983.]

28

*Guy Jones, Jr., P.A.,* for appellants.

*James D. Sprott,* for appellee.

JOHN I. PURTLE, Justice. This is an appeal from the Faulkner County Circuit Court wherein the court dismissed appellants' counterclaim, refused to allow the pleadings to be amended, refused to allow evidence on certain elements of

damages and entered a judgment in favor of the appellee. On appeal it is argued: (1) the trial court erred in denying appellants' motion for directed verdict; (2) the trial court erred in precluding appellants from presenting evidence of formation and execution of the original contract; (3) the trial court erred in refusing to allow appellants to present evidence of consequential damges; (4) the trial court erred in awarding damages to appellee and finding the resale of the secured items was commercially reasonable; and, (5) the trial court erred in awarding attorney's fees. We reject the first three arguments, accept a portion of the fourth and grant the fifth listed argument because attorney's fees are not recoverable in this case.

In March of 1977 the appellants purchased a tractor, disc and grain cart from Nash Implement Company. Nash subsequently was taken over by Wheatley Implement Company. A financing statement and security agreement were executed in connection with the purchase of this equipment, the subject of this lawsuit. Nash sold the papers on this transaction to White Motor Credit Corporation. The assignment was with recourse. The appellants failed to make the annual payment due in February of 1978. In September of the same year White Motor Credit Corporation filed replevin to recover the equipment and to obtain a deficiency judgment. The appellants answered, objected to delivery of the chattels and denied that White was the proper party in interest. They alleged the implement company was the real party in interest. Appellants (then defendants) filed an amended answer and third-party complaint against Nash Implement Company (now Wheatley Implement Company). The third-party complaint alleged fraud in the inducement and execution of the contract, alteration of the contract, breach of warranty and other grounds. Wheatley filed an answer and counterclaim against appellants. On February 12, 1981, Wheatley took the deposition of appellant Stephen Harper. Some questions were not answered at that time and appellants' attorney agreed to furnish additional information at a later date.

Wheatley propounded interrogatories to appellants on June 3, 1981 and later filed an amended answer wherein they

asserted waiver. White then moved to dismiss due to the fact that they were in bankruptcy. On July 20, 1981, Wheatley filed a motion to compel discovery. There was no response from the appellants. On July 27, 1981, a conference call was arranged between the trial judge and all the parties to the action. At this time the appellants mentioned that they were claiming the right to rescind the contract. July 28, 1981, before commencement of the trial, the court granted White's motion to dismiss and specifically precluded defendants from putting on proof of consequential damages resulting from breach of warranty, fraud and from their failure to produce evidence requested in discovery. The court also precluded appellants from offering evidence on the formation of the contract. Thus the case went to trial with appellants and Wheatley being the only parties to the action. The only issue considered by the court was the commercial reasonableness of the resale of the equipment.

At trial, the proof indicated that the total balance due on the equipment was $23,543. The court allowed $568.80 attorney's fees incurred by White at the time of the repossession, and found a deficiency, after sale of the chattels, in the amount of $7,561.80. The court allowed an additional attorney's fee of $894.81, plus costs in the amount of $29.

The first point argued by appellants is that the court erroneously failed to grant a verdict in their favor based on the failure of proof that Wheatley was the real party in interest. Appellants' pleadings alleged that Wheatley was the real party in interest and there were no amendments to allege that White was the real party in interest. The record contains no documentary proof that Wheatley assigned the debt to White or that White reassigned it to Wheatley. The court allowed White to be dismissed from the proceedings without objection. The facts indicate that Wheatley took physical repossession of the collateral and subsequently sold it without advertising. In view of the fact that appellants insisted all along that Wheatley was the real party in interest, we do not think they were prejudiced by the court allowing White to be dismissed from the action.

The trial court refused to allow appellants to present evidence concerning the formation and execution of the contract. From the record it is not entirely clear why the court would not hear this evidence. The court did state that the elements of the claim against the appellee would not be allowed because the appellants failed to supply answers to questions and interrogatories. The court held that ARCP Rule 8 required the parties to clearly set forth the relief to which they believed they were entitled. The court also held that fair rental values could be claimed by the vendor in this case. It was further stated that since appellee was not prepared to go forward with the rental value witnesses, the court would dismiss the appellants' cross-complaint. Appellants' attorney then inquired what proof he would be allowed to put on regarding claims of defective condition of equipment, unauthorized remaking of the contract and proof of fraudulent misrepresentations. The court stated that all such claims would go out the window.

Appellants first failed to complete the answers to the questions presented on deposition of appellant Stephen Harper. Also, the appellants failed to answer the interrogatories of June 3, 1981. A motion to compel discovery was filed on July 22, 1981. There was no response or request for extension of time made by appellee. The court took no action prior to the date of the trial at which time the appellants' pleadings were struck. ARCP Rule 37 (d) states:

> If a party . . . fails . . . (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under (A), (B) and (C) of subdivision (b) (2) of this rule.

The sanctions stated in subparagraphs (B) and (C) of ARCP Rule 37 (b) (2) provide:

> (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or

prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

In view of the provisions of the foregoing rules the trial court had the discretion under the circumstances of this case to take the action it did in striking the appellants' pleadings relating to the formation of the contract and consequential damages. This extraordinary remedy should be used sparingly and only when other measures fail because of the inherent danger of prejudice.

Appellants insist it was error for the trial court to preclude them from presenting evidence of consequential damages resulting from alleged breaches of warranties and fraudulent misrepresentation. This argument is addressed in the preceding section of this opinion. As to this argument the court made the following statement:

In the depositions taken in February, 1981, the Harpers failed to answer certain questions and promised to furnish information and answers to those questions and they have failed, refused, or neglected to do so until this present time.

That as a result of that, in the telephone conversation held the day before the trial, their cross-complaint has related to the answers that they failed to give and supply would not be allowed on the trial of the case set for today.

Appellants insist they did not fail to answer any question at the deposition. While this is true, they did promise to present certain requested material which was not available at the time of the depositions. This material was never furnished. Additionally, the appellants failed to answer the interrogatories which were submitted to them

well in advance of the trial. Among the interrogatories were those requesting knowledge about the alleged breaches of contract and fraudulent acts. Also, the interrogatories requested the names of witnesses to be called. The interrogatories were relevant to the claim for incidental damages and the failure to furnish them or offer a reason why they were not furnished justified the court in striking this particular claim.

The fourth argument presented by the appellants is that the trial court erred in finding that the resale of the chattels was commercially reasonable. It is not seriously disputed that the appellee did not give notice of the sale of these repossessed items of property. The real issue on this point is whether the appellants were given proper credit for the proceeds of the sale. As to this particular point we must decide whether the appellants were given all the credits to which they were entitled or would have been entitled had the private sale been conducted according to law. *Universal C.I.T.* v. *Rone,* 248 Ark. 665, 453 S.W.2d 37 (1970).

The proof offered on the issue of commercial reasonableness of this sale was presented by Jerry Van, an employee of White Motor Credit Corporation; Verlon Spencer, manager of Wheatley Implement Company; and Ernest Loewer, farmer, and president of Wheatley Implement Company. It was Mr. Van's opinion that the tractor was worth between $15,000 and $16,000. He stated that he had recieved a bid of $12,000 which he considered ridiculous. This witness professed to have no knowledge of the actual physical condition of the tractor at the time of the sale to another White dealer in Oklahoma. Mr. Spencer stated he tried to sell the Harper vehicle and talked to three different people about it. He received the bid of $12,000 from one of these people and he considered the price inadequate. He did express the opinion that the price ultimately received was the top price. He also stated that the grain cart was rusted out and was offered for sale for $300. He had no knowledge of the actual sale. The disc was still on hand, and he thought it had a value of $1,000. Witness Loewer testified that he did not know when the grain cart was sold but they had to do repair on it because it was rusted out. According to him, $300 was spent on repair

and the cart sold for $700, leaving a net of $400 for the cart. Witness Loewer stated that he did not take part in the day-to-day operations of his company although he tried to keep up with the values of White equipment. He had no knowledge as to the value of the tractor when sold in September of 1979.

It was the duty of the creditor to prove the amount that should have been obtained had the sale been conducted according to the law. *Universal C.I.T.* v. *Rone*, supra. In the present case the ruling of the court prevented the appellants from introducing evidence of the commercially reasonable value of the chattels. The Uniform Commercial Code states that the fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. Ark. Stat. Ann. § 85-9-507 (2) (Supp. 1981). The debtor has a right under the code to recover from the secured party any loss caused by failure of the secured party to comply with the provisions of the code. Ark. Stat. Ann. § 85-9-207 (3) (Add. 1961).

In view of the fact that the debtor was prevented from presenting evidence of the commercially reasonable value of the equipment at the time of the sale, we think it was prejudicial. There is no doubt that the secured party is not absolutely required to proceed by public sale. *Carter* v. *Ryburn Ford Sales, Inc.,* 248 Ark. 236, 451 S.W.2d 199 (1970). However, when the sale is conducted in a manner not in accordance with the provisions of the code, the secured party does so at his own risk. In any event, the secured party would be entitled to keep the proceeds received as a result of the sale even though they were inadequate. However, under such condition, the debtor would not owe the difference between the price received and the commercially reasonable value of the property. The only evidence of the value of the tractor was by the employee who repossessed the tractor for White. We think this is insufficient.

Finally, appellant argues that the court erred in allowing attorney's fees. We agree with this argument and hold that the court erred in allowing attorney's fees. In *Brady* v.

*Alken, Inc.*, 273 Ark. 147, 617 S.W.2d 358 (1981), we held that it was the settled law in Arkansas that attorney's fees are allowed only by statute. The statute in question here (Ark. Stat. Ann. § 68-919 [Repl. 1979]) provides for attorney's fees only on promissory notes.

The contract and security agreement, in fine print on the back side of the contract, allowed attorney's fees to the "extent permitted by law." The Uniform Commercial Code provides for payment of reasonable attorney's fees in cases "not prohibited by law." It is obvious that the code attempted to allow attorney's fees in those cases where it was not prohibited by law which standard is substantially different from allowing attorney's fees to the extent permitted by law. We have previously held that attorney's fees are not allowed except when expressly provided for by statute. Attorney's fees were disallowed in an action based on breach of contract in the case of *Romer* v. *Leyner*, 224 Ark. 884, 277 S.W.2d 66 (1955). In *Romer*, it was stated: "In a suit of this kind there is no provision under the statutes or decisions of this state to allow attorney fees or miscellaneous expenses as an element of damages." In *Romer*, we quoted with approval language from *White River, Lonoke & Western Ry. Co.* v. *Star Ranch & Land Co.*, 77 Ark. 128, 91 S.W. 14 (1905), which said: "Attorney's fees are not ordinarily held to be an element of damages which may be recovered for breaches of contract." We further quoted from *American Exchange Trust Company* v. *Trumann Special School District*, 183 Ark. 1041, 40 S.W.2d 770 (1931), as follows: "Attorney's fees cannot be allowed as costs in suits, except as provided by statute, the same being regarded as a provision for a penalty and not to be enforced in the State courts." We followed the reasoning in these two cases in *Brady* v. *Alken, Inc.*, supra. In *Brady*, we held that in the absence of a statute allowing attorney's fees it was error to allow such fees.

Since the trial court erred in prohibiting the appellant from producing evidence as to the commercial reasonableness of the sale of the property and in awarding an attorney's fee, we must reverse and remand for a new trial.

Reversed and remanded.